

ENTERED
04/27/2011

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **IN RE:** | § | |
| **MANUEL M. MELCHOR,** | § | **Case No. 09-37224** |
| **Debtor(s).** | § | |
| | § | **Chapter 13** |
| | § | |
| **MANUEL M. MELCHOR,** | § | |
| **Plaintiff(s)** | § | |
| | § | |
| **VS.** | § | **Adversary No. 10-03582** |
| | § | |
| **SAN ANTONIO FEDERAL CREDIT** | § | |
| **UNION,** | § | |
| **Defendant(s).** | § | **Judge Isgur** |

**MEMORANDUM OPINION**

Manuel Melchor filed this adversary proceeding against San Antonio Federal Credit Union ("SACU"), asserting causes of action for contempt, sanctions under § 105 of the Bankruptcy Code, and violations of the Texas Debt Collection Act and the Texas Deceptive Trade Practices and Consumer Protection Act ("DTPA"). Melchor alleges that SACU attempted to collect legal fees without seeking Court approval. The Court finds that SACU violated Fed. R. Bankr. P. 2016 and the Texas Debt Collection Act, but that its conduct is neither in contempt of Court nor sanctionable.

**Background**

On September 30, 2009, Melchor filed a voluntary chapter 7 petition in this Court. At the time of the filing, Melchor owned a 2006 Nissan Maxima ("Maxima"). The Maxima was collateral for Melchor's debt to SACU. Under the terms of the debt contract, SACU was entitled to recover any reasonable legal fees it incurred in an effort to collect on the debt. At the time of the petition, Melchor was current on his obligations to SACU.

SACU filed a motion for relief from the automatic stay on November 23, 2009, and the Court granted the motion on December 11, 2009. The motion also sought to recover legal fees and costs not exceeding the amount of Melchor's equity in the vehicle. Pl's Ex. 2, at 2. The amount of equity was incorrectly stated as $0.00; Melchor actually had over $13,000.00 in equity. SACU chose not to pursue any state-law remedies to take possession of the Maxima.

On December 15, 2009, Melchor's case was converted to a case under chapter 13. Melchor remained current on his payments to SACU after the conversion. On March 16, 2010, the Court confirmed Melchor's chapter 13 plan. The plan reinstated the terms of the contract between SACU and Melchor. It did not reimpose the automatic stay. Under the terms of the reinstated contract, SACU was still entitled to seek reimbursement for legal fees. Under Fed. R. Bankr. P. 2016, however, SACU was required to obtain the Court's approval of the amount of any legal fees that would be collected from Melchor's bankruptcy estate.

Melchor made the last payment on the Maxima on October 15, 2010. Pl's Exs. 9-10. On October 17, 2010, Melchor sent a letter to SACU, requesting that SACU deliver the title to the Maxima to him. Pl's Ex. 9. SACU responded on October 22, 2010, refusing to return the title until Melchor paid $1,255.44 in legal fees incurred in the prosecution of the motion to lift the stay. Pl's Ex. 8. SACU addressed the letter to Melchor's attorney, Michael Glen Walker. The letter states, in part:

> I am writing in regards to your client's letter dated 10/17/10 (copy enclosed) Please advice your client that the above loan has a principal balance of $1,255.44 which consists of Attorney fees. Our Attorney Don Knabeschuh as you might recall represented SACU in your clients' bankruptcy filing Ch.7 and Ch.13 in the above case.
>
> . . . .

> The (10) ten day payoff for the loan; good only thru 10/31/10, is $1,258.53.

Pl's Ex. 10, at 2.

Melchor filed this adversary proceeding on November 10, 2010, asserting causes of action for contempt, sanctions under § 105 of the Bankruptcy Code, and violations of the Texas Debt Collection Act (Chapter 392 of the Texas Finance Code) and the Texas DTPA. Melchor also sought a declaration that the amount of legal fees sought was unreasonable and that Melchor had paid the SACU claim in full. The contempt cause of action asserts that SACU's actions violated the order confirming Melchor's chapter 13 plan. The § 105 cause of action asserts that SACU violated 11 U.S.C. § 506 and Fed. R. Bankr. P. 2016 by failing to seek court approval for the legal fees. Melchor also asserts that SACU violated the Texas Debt Collection Act by threatening to take an action prohibited by law, by engaging in an unconscionable means of collection, by misrepresenting the extent and amount of Melchor's consumer debt, and by falsely representing that the amount of Melchor's consumer debt could be increased by the stated amount of legal fees when the fees were subject to judicial discretion. SACU filed an answer on December 13, 2010. ECF No. 8.

The parties filed stipulations on March 9, 2011. ECF No. 10. Trial on SACU's liability was held on March 14, 2011. Trial on damages will be held at a later date. Melchor seeks actual damages, including attorney's fees.

**Analysis**

Fed. R. Bankr. P. 2016(a) requires any creditor attempting to collect legal fees from a bankruptcy estate to seek Court approval. SACU never sought Court approval of the legal fees it attempted to collect from Melchor. SACU's collection attempt violated Rule 2016 and Texas state law. Because the legal fees were subject to the Court's discretion, SACU's representation

to Melchor that he definitely owed the fees violated the Texas Debt Collection Act and therefore was a deceptive trade practice under the Texas DTPA.

***Bankruptcy Rule 2016***

SACU violated Fed. R. Bankr. P. 2016 by attempting to collect legal fees from Melchor's bankruptcy estate without seeking Court approval. Rule 2016(a) requires Court approval of fees and expenses that will be collected from the bankruptcy estate. *Padilla v. Wells Fargo Home Mortgage, Inc. (In re Padilla)*, 379 B.R. 649, 657 (Bankr. S.D. Tex. 2007). The Rule applies to any "entity seeking interim or final compensation for services or reimbursement of necessary expenses, from the estate," without distinguishing between pre- and post-confirmation attempts to collect reimbursable expenses. *Id.* (quoting Fed. R. Bankr. P. 2016(a)).

Melchor asserts that SACU violated Rule 2016 and § 506(b) of the Bankruptcy Code, which limits a secured lender's ability to collect legal fees under a pre-petition contract. After a chapter 13 plan is confirmed, however, § 1327(a) of the Bankruptcy Code—not § 506(b)—governs the lenders' rights to collect legal fees. *Cf. id.* at 655-56. Although the plan may provide that a lender retains its pre-petition contract rights, the lender's *exercise* of those rights is still limited by Rule 2016, the order confirming the plan, and applicable non-bankruptcy law. *Cf. id.*

Melchor's chapter 13 plan was confirmed on March 23, 2010. The plan reinstated the contract between SACU and Melchor. Under the contract, SACU is entitled to the reasonable legal fees it incurred in its collection efforts, including any reasonable fees connected to SACU's motion to lift the automatic stay. *See* Pl's Ex. 7 & 8 (quoting the sales contract: "If we hire an attorney who is not our employee to enforce this contract, you will pay reasonable attorney's fees and court costs.").

Collecting reasonable legal fees would be an exercise of SACU's rights under the plan—not, as Melchor asserts, a violation of the confirmation order. But SACU's exercise of its right to legal fees is governed by Rule 2016. Before SACU can collect the fees, the Court must determine whether the amount sought is reasonable and thus within SACU's rights under the contract and the confirmation order. Moreover, Melchor was current on his payments and had over $13,000.00 in equity—nearly twice the amount he owed to SACU. In light of these facts, the Court may conclude that the motion was unnecessary and that the fees were therefore unreasonable. By attempting to collect the fees without Court approval, SACU violated Rule 2016.

SACU argued in its Answer and at trial that, under § 326(h)(1) of the Bankruptcy Code, Melchor's vehicle is no longer property of the estate, and therefore Rule 2016 does not govern its attempt to collect legal fees. ECF No. 8, at 8. The Court finds this argument irrelevant. Regardless of whether the car is property of the estate, the funds SACU seeks to collect—Melchor's post-petition earnings—*are* property of the estate. 11 U.S.C. § 1306(a)(2); *Rodriguez v. Countrywide Home Loans, Inc. (In re Rodriguez)*, 421 B.R. 356, 373-78 (Bankr. S.D. Tex. 2009).

***Texas Debt Collection Act***

Because SACU was prohibited under Rule 2016 from collecting the fees without the Court's approval, SACU's actions were also prohibited under the Texas Debt Collection Act (Chapter 392 of the Texas Finance Code). The Texas Debt Collection Act prohibits a creditor[1] from "representing that a consumer debt will definitely be increased by the addition of attorney's fees, investigation fees, service fees, or other charges if the award of the fees or charges is subject to judicial discretion[.]" Tex. Fin. Code § 392.304(a)(13). The award of fees is subject

[1] SACU is a creditor as defined in Tex Fin. Code § 392.001(2). Stipulations ¶ 26, ECF No. 10, at 4.

to the Bankruptcy Court's discretion, and therefore SACU was prohibited from representing that Melchor definitely owed the amount.

SACU, however, did represent that Melchor definitely owed the amount. SACU's letter, addressed to Melchor's lawyer Michael Walker, states, "Please advice [sic] your client that the above loan has a principal balance of $1,255.44 which consists of Attorney fees." Pl's Ex. 10, at 2. The Court finds that SACU's statements in the letter represent that Melchor's debt will definitely be increased by the addition of legal fees. This representation was reinforced by SACU's refusal to return the title to the Maxima until the fees were paid. The letter therefore violates § 392.304(a)(12) of the Texas Finance Code.

Because the Court finds that SACU's actions were unlawful under § 392.304(a)(12) of the Texas Finance Code, the Court does not decide whether SACU also violated other provisions of the Texas Finance Code.

***Actual Damages, Legal Fees, and Costs***

Melchor is entitled to the actual damages he has sustained as a result of SACU's unlawful attempt at collecting the legal fees, along with the reasonable and necessary legal fees and costs Melchor has incurred in prosecuting this adversary proceeding. *See* Tex. Bus. & Com. Code § 17.50(d) (providing that a prevailing plaintiff in a DTPA claim, including a claim for violation of the Texas Debt Collection Act, shall be awarded reasonable and necessary legal fees and costs). The amount of Melchor's actual damages, legal fees, and costs will be determined at a later trial.

***Treble Damages Under the DTPA***

Melchor also asserts that he is entitled to punitive damages and treble damages as provided by the Texas DTPA. The Court finds that Melchor is not entitled to punitive or treble damages.

SACU violated the DTPA. Violations of the Texas Debt Collection Act are automatically deceptive trade practices under the DTPA. Tex. Fin. Code § 392.404(a). Melchor meets the definition of a "consumer" for purposes of establishing standing under the DTPA. Tex. Bus. & Com. Code § 17.45(4).[2]

The DTPA authorizes courts to award mental anguish damages (in an amount not more than three times actual damages) if the defendant acted knowingly.[3] If the defendant acted intentionally, courts may award additional damages (up to three times actual damages and mental anguish damages). Tex. Bus & Com. Code § 17.50(b)(1); 17.50(h). *Knowingly* "means actual awareness, at the time of the act or practice complained of, of the falsity, deception, or unfairness of the act or practice giving rise to the consumer's claim[.]" Tex. Bus. & Com. Code § 17.45(9). *Intentionally* "means actual awareness of the falsity, deception, or unfairness of the act or

---

[2] "'Consumer' means an individual, partnership, corporation, this state, or a subdivision or agency of this state who seeks or acquires by purchase or lease, any goods or services, except that the term does not include a business consumer that has assets of $25 million or more, or that is owned or controlled by a corporation or entity with assets of $25 million or more." Tex. Bus. & Com. Code § 17.45(4).

[3] Any mental anguish damages that constitute "actual damages" under the Texas Debt Collection Act could be recovered without meeting the DTPA's requirements of knowledge or intent. When an action is brought under the DTPA alone, the plaintiff may recover "economic damages," as defined in the DTPA. The plaintiff also may, if the mental-state requirements are met, recover mental anguish damages (up to three times the amount of the economic damages) and additional damages (up to three times the amount of economic damages plus mental anguish damages).

But when an action is brought under a tie-in statute like the Texas Debt Collection Act, the base number is "actual damages," a number that is not limited to the amounts defined as "economic damages" under the DTPA. Under the Texas Debt Collection Act, a plaintiff may recover mental anguish damages as part of his or her actual damages. *Bullock v. Abbott & Ross Credit Servs., L.L.C.*, 2009 WL 4598330, at *3 (W.D. Tex. Dec. 3. 2009) (citing Tex. Fin. Code § 392.403(a)(2)); *Monroe v. Frank*, 936 S.W.2d 654, 661 (Tex. App.—Dallas 1996). Section 17.50(h) could therefore allow a plaintiff to recover actual mental anguish damages without a showing of knowledge.

practice, . . . coupled with the specific intent that the consumer act in detrimental reliance on the falsity or deception or in detrimental ignorance of the unfairness." Tex. Bus. & Com. Code § 17.45(13). The amount of additional damages to award after finding a violation of the DTPA is within the discretion of the trier of fact. *Boat Superstore, Inc. v. Haner*, 877 S.W.2d 376, 379 (Tex. App.—Houston [1st Dist.] 1994, no pet. h.).

The Court finds that SACU did not act knowingly or intentionally. Although SACU intentionally attempted to collect the legal fees, there is no evidence that SACU did so with the actual awareness that its collection attempt violated the Texas Debt Collection Act or that it was otherwise false, deceptive, or unfair. SACU falsely represented that the debt would definitely be increased by the amount of the legal fees, but SACU was unaware that the representation was false.

The DTPA's definition of *knowingly* requires that the defendant had actual awareness that its actions were deceptive. Violations of Texas Debt Collection Act are deemed to be deceptive trade practices. Tex. Fin. Code § 392.404(a). The requirement of actual awareness of deceptiveness could therefore be satisfied by a defendant's awareness that the act violated the Texas Debt Collection Act. However, SACU was not aware either that its acts were intrinsically deceptive or unfair or that its acts violated the Texas Debt Collection Act.

The DTPA's definition of *intentionally* includes both actual awareness *and* a specific intention that the consumer detrimentally rely on the deceptive trade practice. All intentional acts must also be knowing. Because SACU lacked actual awareness, SACU also did not intentionally violate the Texas Debt Collection Act. The Court therefore denies treble damages.

The Court also denies punitive damages under the Texas Civil Practice & Remedies Code. Punitive damages (other than treble damages authorized by the DTPA) are not warranted

in the absence of fraud, gross negligence, or malice. Tex. Civ. Prac. & Rem. Code § 41.003; *Manon v. Tejas Toyota, Inc.*, 162 S.W.3d 743, 757 (Tex. App.—Houston [14th Dist.] 2005, no pet.). The Court does not find that SACU acted with fraud, gross negligence, or malice.

***Sanctions***

Melchor requests sanctions under § 105 of the Bankruptcy Code for SACU's violation of Rule 2016 and the Texas Debt Collection Act. He also seeks sanctions for SACU's alleged contempt of the confirmation order by demanding payment in excess of the amount allowed in the confirmed plan.

The Court does not award any sanctions. SACU did not knowingly violate Rule 2016 and the Texas Debt Collection Act. Additionally, SACU has the right, under the reinstated contract, to seek reasonable legal fees. To the extent the fees sought were reasonable, SACU did not attempt to collect an amount in excess of that allowed by the confirmed plan. If any of the fees sought are not reasonable, SACU's attempt to collect those fees was not an intentional violation of the confirmation order and plan. Sanctions are not warranted.

***Injunctive Relief***

Melchor requests that SACU be enjoined from further demands for payment of the legal fees. The Court has the discretion to grant injunctive relief under the DTPA. *David McDavid Pontiac, Inc. v. Nix*, 681 S.W.2d 831, 839 (Tex. App.—Dallas 1984, writ ref'd n.r.e.). However, the Court does not find that SACU's actions are sufficient to invoke the injunctive provisions of the DTPA.

***Declaratory Relief***

Melchor also seeks a declaration that he has paid the claim of SACU in full and that the legal fees SACU seeks are unreasonable. The Court denies declaratory relief. SACU's contract

with Melchor entitles SACU, if it hires an attorney to collect Melchor's debt, to recover "reasonable attorney's fees and court costs as the applicable law allows." Pl's Ex. 6, at 5. SACU retains its right to seek Court approval for the fees, and the Court will not decide at this time whether the fees are reasonable. Because the potential legal fees are part of SACU's claim against Melchor, the Court will not declare that Melchor has paid SACU's claim in full.

## Conclusion

SACU violated the Texas Finance Code and the Bankruptcy Rules by attempting to collect legal fees without seeking the Court's approval. Melchor is entitled to actual damages, legal fees, and costs. Trial on the amount of actual damages, legal fees, and costs will be held at a later date.

SIGNED **April 27, 2011.**

Marvin Isgur
UNITED STATES BANKRUPTCY JUDGE